DECISION
This is an appeal by defendant-appellant, Winthan Properties, Inc. ("Winthan"), from a judgment of the Franklin County Court of Common Pleas granting partial summary judgment in favor of plaintiff-appellee, Shoney's, Inc. ("Shoney's").
On August 10, 1999, Shoney's filed a complaint, naming as defendants Winthan and Sidney Mishkin. Under count one of the complaint, Shoney's sought a declaratory judgment from the court as to the validity and enforceability of certain lease instruments. More specifically, Shoney's asserted that it was occupying property as a month-to-month tenant as a result of defectively executed instruments. Under count two, Shoney's sought, alternatively, a declaratory judgment that Winthan had wrongfully interfered with Shoney's right to assign its leasehold interest, thereby affecting the validity and enforceability of various lease instruments. Shoney's complaint also asserted causes of action for breach of contract, tortious interference, slander and civil conspiracy.
The subject of this appeal involves property located at 1988 Stringtown Road, Grove City, Ohio. On July 23, 1982, a lease on the property was executed between Winthan, a New York corporation, as lessor, and Boury Bros. Realty Corp. ("Boury Bros."), of West Virginia, as tenant or lessee. The lease was for a term of twenty years, with the tenant to pay annual rent in the amount of $55,000, payable in equal monthly installments of $4,583.33. The lease also contained a provision pro-hibiting the tenant from assigning the lease without the written consent of the landlord. On June 21, 1985, Winthan and Boury Bros. executed an amended lease.
A May 1989 document, designated as an "agreement of assignment of lease and consent to assignment of lease," provided for Boury Bros., as tenant, to assign "all of its right, title and interest" in the 1982 lease agreement to G.M.B., Inc., an Ohio corporation. The document contained the signatures of the president of Winthan, the executive vice-president of Boury Bros., and the chairman of G.M.B., Inc. Each of the parties to the agreement signed the document in different states and on different dates.
On January 4, 1990, an "amendment to lease" was executed between Winthan and G.M.B., Inc., as tenant, "having succeeded Boury Bros. Realty Corp." The intent of the document was to amend "Paragraphs 38 to 41 of the Lease governing the computation of the annual rent increase."
On April 29, 1993, representatives of G.M.B., Inc., Winthan and Shoney's signed a document entitled "assignment of lease," which provided, in part, that:
 GMB, INC., an Ohio corporation as successor in interest to Boury Bros. Realty Corp. ("Assignor"), hereby assigns, transfers and sets over to Shoney's, Inc. ("Assignee") all of the right, title and interest of Assignor as tenant in that certain Lease dated July 23, 1982, and amended by Rider to Indenture dated August 23, 1982, Amended Lease dated June 21, 1985 and Amendment to Lease dated January 4, 1990 pursuant to which Assignor is tenant and Winthan Properties, Inc. is landlord ("the Lease").
Also on April 29, 1993, representatives of Winthan and Shoney's signed a document entitled "fourth amendment to lease." Under the amendment, the term of the 1982 lease was extended from May 3, 1993 through April 30, 2003. According to averments by Shoney's in its complaint, Shoney's has not conducted business at the property since December 1997.
As noted, Shoney's filed their complaint against defendants on August 10, 1999. Defendants filed an answer on October 14, 1999. On March 21, 2000, Winthan filed a motion for leave to file an amended answer and counterclaim.
On May 16, 2000, Shoney's filed a motion for partial summary judgment. In the motion, Shoney's argued that the 1993 assignment was defective under Ohio's statute of conveyances, and that plaintiff's tenancy was terminated based upon Winthan's interference with Shoney's right to assign its leasehold interest. Defendants filed a memorandum in opposition to Shoney's motion for partial summary judgment. On June 12, 2000, defendant Mishkin filed a motion to dismiss and/or motion for summary judgment. On July 6, 2000, Shoney's filed a memorandum in opposition to defendants' cross-motion for summary judgment. On July 6, 2000, Shoney's filed a memorandum in opposition to defendant Mishkin's motion to dismiss and/or motion for summary judgment. On July 20, 2000, Winthan filed a motion for partial summary judgment on its counterclaim against Shoney's.
On January 3, 2001, the trial court issued a decision and entry granting Shoney's motion for partial summary judgment and denying defendants' cross-motion for summary judgment. On January 19, 2001, Shoney's filed a notice of voluntary dismissal of its claims against defendant Mishkin regarding counts four, five and six of Shoney's complaint. Also on that date, Shoney's filed a notice of voluntary dismissal of its claims against Winthan as to counts five and six of the complaint.
On appeal, Winthan sets forth the following two assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 The Trial Court Erred as a Matter of Law in Granting the Motion for Partial Summary Judgment of Plaintiff-Appellee Shoney's Inc. Based on its Finding That Certain Lease Documents Were Executed in a Defective Manner.
SECOND ASSIGNMENT OF ERROR[:]
 The Trial Court Erred to the Prejudice of Defendant-Appellant Winthan in Finding That a Question of Fact Existed as to Whether Winthan Interfered with Shoney's "Right" to Assign the Lease.
Under the first assignment of error, Winthan asserts that the trial court erred in granting partial summary judgment in favor of Shoney's based on the court's finding that certain lease documents were executed in a defective manner. More specifically, Winthan argues that the trial court incorrectly held that the May 1989 "agreement of assignment of lease and consent to assignment of lease" (hereinafter "1989 assignment") was not valid because it did not meet the requirements of Michigan law. Winthan further argues that the court erred in failing to properly apply the language of R.C. 5301.06 in its determination as to the validity of the 1989 assignment.
In Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66, the Ohio Supreme Court noted that, pursuant to Civ.R. 56(C), summary judgment is appropriate based upon the following tripartite demonstration:
 * * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.
In its decision, the trial court initially addressed the issue of whether the 1989 assignment was validly executed in accordance with the provisions of R.C. 5301.06. Shoney's had argued before the trial court that this document was not valid under either Michigan or Ohio law. The trial court noted that this agreement "apparently was made in May 1989; however, the date is omitted in the body of the contract." The court further noted that the 1989 assignment "purports to assign all of the right, title, and interest of the tenant, Boury Bros., to G.M.B., Inc."
In considering the validity of the 1989 assignment, the court stated the following in its decision:
 Winthan Properties, Inc., is located in New York; and its President signed the 1989 instrument before one witness, i.e. attestation, and a notary public, i.e. acknowledgement. This Court concludes that this document was properly executed in New York.
 Boury Bros. Realty Corp. is a Michigan corporation. This assignment was executed in Michigan before one witness and a notary public who was the same person. Michigan Law, MSA § 20.527, provides that leases for terms exceeding three years require two witnesses and an acknowledgement as conditions necessary for a valid lease. See also MSA § 26.552, MSA § 26.527. A review of these statutes demonstrates that the 1989 assignment was not properly executed in Michigan because Boury Bros. failed to execute the 1989 assignment in the presence of two witnesses.
 Likewise, Ohio law requires that in order to be valid, leases for terms exceeding three years must be acknowledged in the presence of two witnesses. See O.R.C. § 5301.01, O.R.C. § 5301.08. Thus the 1989 assignment of the leasehold from Boury Bros. to G.M.B. is defective under Ohio law. Accordingly, since this assignment is not in conformity with Michigan or Ohio law, it is not valid.
The trial court next considered the 1993 "assignment of lease" document (hereinafter "1993 assignment"), signed on April 29, 1993 and recorded on May 3, 1993, purporting to assign the lease from G.M.B., Inc. to Shoney's. The court found the 1993 assignment to be invalid, holding that, because the 1989 assignment from Boury Bros. to G.M.B., Inc. was invalid, G.M.B., Inc. "did not have an interest to then assign" to Shoney's and, thus, the leasehold interest of Boury Bros. "was never conveyed" to Shoney's. The court further held that "the defective 1989 assignment is not valid against Plaintiff because it never executed an amendment to the lease with Winthan that acknowledges the 1989 assignment as valid and that G.M.B. had the right to assign the lease."
The trial court also considered the "Fourth Amendment to Lease" document (hereinafter "1993 amendment"), signed by Winthan and Shoney's on April 29, 1993. The court held that "[t]his amendment is invalid because it predates the 1993 assignment." The court noted that, although the 1993 amendment and the 1993 assignment were both executed on April 29, 1993, the 1993 assignment was not recorded until May 3, 1993. The court held that "[a]n assignment is effective on the date it is recorded, not the date it was executed," and the court thus concluded, "there could be no amendment to an interest that had not yet been conveyed." Finally, having determined that "the lease between Plaintiff and Defendant Winthan is invalid," the court held that the resulting tenancy was month-to-month, based on language from the 1993 assignment.
We initially address, under Winthan's first assignment of error, whether the trial court erred in holding that the 1989 assignment was invalid because of the failure by Boury Bros. to comply with the law of conveyances in Michigan. As noted in the trial court's decision, a representative of Boury Bros. signed the document in the state of Michigan on May 26, 1989, before one witness who also acted as the notary. Further, a representative from G.M.B., Inc. signed the 1989 agreement in West Virginia on May 9, 1989, along with two witnesses (one of these witnesses also acting as the notary). Finally, on June 12, 1989, a representative of Winthan signed the document in New York before one witness who also acted as the notary.
R.C. 5301.06 provides as follows:
 All deeds, mortgages, powers of attorney, and other instruments of writing for the conveyance or encumbrance of lands, tenements, or hereditaments situated within this state, executed and acknowledged, or proved, in any other state, territory, or country in conformity with the laws of such state, territory, or country, or in conformity with the laws of this state, are as valid as if executed within this state, in conformity with sections 1337.01 to 1337.03, inclusive, and 5301.01 to 5301.04, inclusive, of the Revised Code.
Winthan's major contention is that the 1989 assignment was a contract, and that the law of the state where the "last act necessary" to complete the assignment occurred determines the validity of a contract. Winthan interprets R.C. 5301.06 to provide that, if the 1989 assignment was executed in conformity with the laws of the state where it became "fully executed," then Ohio law will recognize it as valid. Winthan maintains that, under the facts of this case, the last individual to sign the 1989 agreement was a representative of Winthan in New York and, therefore, the law of New York controls, which requires that a document for conveyance be acknowledged by a signature before a notary public. Shoney's, on the other hand, argues that the language of R.C. 5301.06 requires the act of "executed and acknowledged, or proved" to require that each signatory to a conveyance of property comply with either Ohio law or the law of the state in which each signature (and acknowledgement) was made.
Thus, the parties focus on the meaning of "executed" under R.C. 5301.06, with Winthan advocating an interpretation synonymous with "fully executed," and Shoney's arguing that "executed and acknowledged" speaks to an act performed by each party to the conveyance, not just the final act of consummating the conveyance. In this regard, we note that "executed" can mean either "performed" or "signed." Black's Law Dictionary (5 Ed. 1979) 509. However, when considered in the context of R.C. 5301.06, pertaining to instruments of writing for the conveyance of land, we find more persuasive Shoney's contention that "executed" refers to a party's execution of the instrument by signature, and that "acknowledged" refers to a declaration by the signatory (and evidence attesting to such declaration, e.g., a certificate by a notary). Accordingly, we conclude that the meaning of "executed and acknowledged" under the statute refers to the act of each party signing and acknowledging an instrument of writing for the conveyance of land according to either the law of Ohio or the law of the state where such act was performed. Thus, we find unpersuasive Winthan's contention that the 1989 assignment was valid under New York law because that state was the place where the last act was performed to "fully execute" the instrument.
Although we disagree with Winthan's interpretation of R.C. 5301.06, we must still consider the trial court's rulings as to the 1993 assignment and the 1993 amendment. Winthan argues that, even if the assignments executed in 1989 and 1993 were invalid, the trial court erred in failing to recognize that, as between Winthan and Shoney's, the 1993 amendment was a valid and enforceable lease.
As previously noted, the trial court found that, because Boury Bros. failed to properly execute the 1989 assignment in accordance with Michigan or Ohio law, G.M.B., Inc. did not have an interest to assign to Shoney's in 1993. The court further noted that, although the 1993 assignment and the 1993 amendment were both executed on April 29, 1993, the 1993 assignment was not recorded until May 3, 1993. The court held that "an assignment is effective on the date it is recorded, not the date it was executed," and thus the court held that "there could be no amendment to an interest that had not yet been conveyed."
Winthan argues that the trial court erred in holding that an assignment is effective on the date it is recorded rather than on the date executed. Winthan argues that case law establishes that the purpose of the requirement that an instrument be recorded is to protect a bona fide purchaser after a document is executed, and that the failure to record does not affect the relationship between the parties to the document. We agree. In McComis v. Walker (Oct. 4, 1979), Franklin App. No. 79AP-243, unreported, this court noted that:
 It has long been the law that the relationship between parties to an instrument affecting title to real estate is not affected by the failure to record the instrument. Nor does the failure to record an instrument affect the rights and obligations of any person who is not claiming as a bona fide purchaser subsequent to the instrument in question.
Under the facts of McComis, this court held that the failure to record an assignment of lease from the original lessor to the plaintiffs had no affect upon the rights and obligations of plaintiffs or the defendant lessee who had originally entered into a lease agreement with the previous owner of the premises.
As noted by Winthan, case law indicates that the purpose behind recording is to provide notice to bona fide subsequent purchasers, and thus courts have held that a defectively acknowledged deed is valid, in the absence of fraud, between the parties to a transaction. Basler v. Multicare Co., Inc. (Nov. 19, 1999), Geauga App. No. 98-G-2201, unreported. See, also, Seabrooke v. Garcia (1982), 7 Ohio App.3d 167,169 (general rule is that an assignee to a mortgage succeeds to all of the rights of the assignor, and the fact the instrument is formally defective should not affect this rule; the purpose of the formal requirements of the documents is to provide evidence of execution of mortgage, not to negate the intent of the parties).
Upon consideration of the above authorities, we conclude that the trial court erred in holding that the assignment was not effective until it was recorded (and in further holding, therefore, that the 1993 amendment was invalid because it predated the 1993 assignment). Rather, we agree with Winthan's contention that the 1993 assignment and the 1993 amendment became effective on the date they were executed (April 29, 1993). In the present case, the intent of the parties, as evidenced by the 1993 amendment, was for Shoney's to lease the premises for a term commencing on May 3, 1993 and expiring April 30, 2003. Further, the undisputed evidence indicates that the parties complied with the terms of the lease even after December of 1997, when Shoney's vacated the premises. (See paragraph 20 of Shoney's complaint.) "Through the date of the filing of this Complaint (August 10, 1999) Shoney's is current in its lease payments required under the 1993 Amendment." Based upon the foregoing, we conclude that the trial court erred in granting plaintiff's motion for partial summary judgment as to count one of the complaint, and Winthan's first assignment of error is sustained.
Under its second assignment of error, Winthan asserts that the trial court erred in holding that a question of fact existed as to whether Winthan interfered with Shoney's right to assign the lease. This assignment of error concerns Shoney's claim made under count two of its complaint, in which Shoney's sought a declaratory judgment as to "lease rights/tenancy," based on the assertion that Winthan wrongfully interfered with Shoney's right to assign its leasehold interest, and that Winthan had waived its right to object to an assignment.
Winthan asserts that the language of the lease at issue unambiguously requires the written consent of the landlord before the tenant can assign the lease and that, under Ohio law, it was permitted to withhold its consent for any reason. See F L Center Co. v. Cunningham Drug Stores, Inc. (1984), 19 Ohio App.3d 72, 75 ("the majority of authority in this country supports the view that where the consent of the lessor to an assignment is required, that consent may be withheld for any reason absent express language in the lease that it may not be unreasonably withheld"). Winthan further contends that it, in fact, did not withhold its consent to Shoney's assignment of the lease. Rather, Winthan argues, it was willing to consent to Shoney's assigning the lease provided that Shoney's would remain primarily liable under the lease; Winthan maintains that Shoney's was unwilling to do so, through no fault of Winthan.
In the present case, Shoney's argued before the trial court that, at the time the lease changed from Boury Bros. to G.M.B., Inc., there was no attempt by Winthan to exercise its prohibition on assignment under the lease. However, the 1989 assignment specifically indicates that consent of the assignment is required of the landlord, and the document further indicates such intent to consent by Winthan. On appeal, Shoney's argues that the 1989 assignment and 1993 assignment were defective and, therefore, Winthan cannot rely upon those documents to demonstrate that it required its consent to all assignments of the lease. Shoney's relies upon The Ohio Citizens Trust Co. v. Astro Dev. Co. Agora, Inc. (Jan. 11, 1985), Lucas App. No. L-84-271, unreported, in which the court held that a lessor could, by consenting to substitution of a new tenant, forfeit its right to enforce a nonassignment clause. The facts of the instant case, however, are inapposite to those in Ohio Citizens Trust, and the trial court in the present case does not appear to have based its ruling on waiver principles, but, rather, on whether Winthan "interfered with Plaintiff's right to assign" by conditioning its consent upon Shoney's agreeing to remain primarily liable under the lease documents. Here, because the language of the lease does not limit the landlord's discretion in approving assignment of the lease, and there is no evidence to establish that Winthan ever elected to disregard the provision requiring written consent to an assignment, we find that there are no material issues of fact as to count two of the complaint. Accordingly, Winthan's second assignment of error is sustained.
Based upon the foregoing, Winthan's first and second assignments of error are sustained, the judgment of the trial court is reversed and this matter is remanded to the Franklin County Court of Common Pleas for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
LAZARUS and KENNEDY, JJ., concur.